ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
MARGOT MERRILL-JOHNSON, Special Assistant United States Attorney (#TX 24062891)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | Case No. 2:21-CR-167 TS |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| vs. | |
| BRENT ORTON, | Honorable Judge Ted Stewart |
| Defendant. | |

The United States, by and through its counsel, Special Assistant U.S. Attorney Margot Merrill-Johnson, hereby files its Sentencing Memorandum. In this case the parties have entered into an agreement pursuant to 11(c)(1)(C) of the Federal Rules of Criminal procedure to where Defendant will be sentenced within a range of 51 to 63 months. A sentence of 63 months followed by 3 years of supervised release would meet the 3553(a) factors.

**GUIDELINES AND PRESENCE REPORT**

The United States agrees that in this case the Defendant's total offense level is 29 with a criminal history category of I. PSR ¶¶ 32, 38-39. As such, the applicable guideline range would be 87 to 108 months imprisonment. PSR ¶ 65.

1

# SENTENCING FACTORS

The relevant sentencing factors are set forth in 18 U.S.C. § 3553(a). While all the factors are important in determining the sentence, the United States focuses on the most relevant factors as they pertain to this case and this particular defendant.

Defendant is a 63-year-old United States citizen who has a limited criminal history and, until recently, was able to avoid engaging in serious criminal conduct. PSR ¶¶ 42-45. Defendant has been able to maintain a business and provide for himself and his family through his employment. PSR ¶¶ 57-61. Defendant's serious criminal conduct began in 2019 when the defendant was approximately 61 years old. PSR ¶ 16. Since 2019 he engaged in extensive criminal behavior which included importing large amounts of a controlled substance, Alpha-Pyrrolidinohexanophenone (hereinafter, "Alpha-PHP) and distributing Alpha-PHP into the community here in the Salt Lake valley. *Id.* It appears, that the Defendant began his criminal behavior in 2019 as a crime of opportunity. Specifically, he used his daughter's[1] friends as customers to start making contacts within the drug trafficking business. PSR ¶ 11. His initial goal was to make money and he chose to pursue the illegal ventures outlined in this case rather than seeking a legitimate source of additional income. *Id.* As such, there is a clear need to protect the public from future crimes of this defendant, to promote respect for the law and to fashion a sentence that will afford an adequate deterrence to future criminal conduct.

---

[1] His daughter has a history of drug addiction and the defendant used her friends who also had drug addiction issues as customers and pawns in his scheme to import Alpha-PHP.

When evaluating the nature and circumstances of the offense and the seriousness of the offense the Defendant's conduct is concerning. Presently, the Defendant was encountered by law enforcement and arrested after he had been engaging in the importation and distribution of Alpha-PHP, otherwise known as bath salts, for the previous two years. PSR ¶¶ 11-16. The Defendant admitted he had imported Alpha-PHP into the United States but what was surprising was how much Alpha-PHP he imported. Information pulled from his online accounts showed that he purchased for importation 23,775 grams of Alpha-PHP from two different websites. PSR ¶ 16. To understand the seriousness of Defendant's conduct the dangers of the drug itself must be understood.

> Alpha-PHP, is a compound of the substituted cathinone and substituted pyrrolidine chemical classes. In general, the intensity of the effects of this substance is comparable to strong stimulants such as methamphetamine, MDPV and alpha-PVP . . .
>
> The pharmacological data for alpha-PHP alone or combined with documented case reports, demonstrate that the potential for fatal and non-fatal overdoses exists; thus, these substances pose an imminent hazard to the public health and safety . . .
>
> Available evidence on the overall public health risks associated with the use of alpha-PHP can cause acute health problems leading to emergency department admissions, violent behaviours causing harm to self or others, or death. Acute adverse effects of synthetic cathinone substances including alpha-PHP are those typical of sympathomimetic agents (e.g., cocaine, methamphetamine, amphetamine) and include among other effects tachycardia, headache, palpitations, agitation, anxiety, mydriasis, tremor, fever or sweating, and hypertension. Other effects, with possible public health risk implications, include psychological effects such as psychosis, paranoia, hallucinations, and agitation. In particular, adverse effects associated with alpha-PHP abuse included vomiting, agitation, paranoia, hypertension, unconsciousness, tachycardia, seizures, cardiac arrest, rhabdomyolysis, or death.

*See* attached Exhibit A at pp. 6, 13. As outlined above, Alpha-PHP provides a similar high to that of methamphetamine or cocaine. Further, it is concerning a typical dosage of

3

Alpha-PHP, to get this same high, begins at 5 milligrams and can go up to 40 milligrams; and, at the time of his arrest (according to law enforcement agents who were investigating multiple Alpha-PHP cases within the Salt Lake valley), in Utah, Alpha-PHP was selling for between $300 to $500 a gram. The high price for Alpha-PHP is driven by two factors. First, since one dose is so small, typically around 5 milligrams, one gram of Alpha-PHP can provide multiple doses to the customer. Second, given that Alpha-PHP is typically imported from oversees at a higher price per gram there are fewer dealers that have the financial resources to first arrange for its importation and second continue to order the drug despite potential seizures by CBP. Taking this into consideration, during the past two years the Defendant imported and distributed into the Salt Lake Valley roughly 23,000 grams of Alpha-PHP, this would be between 575,000 to 4,600,000 doses (575,000 forty milligram doses and or 4,600,000 five milligram doses) of Alpha-PHP and would be worth millions of dollars depending on how much Defendant paid for the Alpha-PHP and how much he sold it for. Given these facts, it is unsurprising that investigators have found that during the time the defendant was engaging in this conduct, he was well known throughout the Salt Lake valley by users and other distributors as one of the main distributors of Alpha-PHP in Utah. Further, given that Alpha-PHP provides serious health risks and public safety risks, the Defendant's conduct which included importing and selling thousands of doses of Alpha-PHP and receiving millions of dollars is serious.

    In this case, the United States recognizes that the Defendant's criminal conduct in the instant case is serious and that the § 3553(a) factors would merit a term of

imprisonment of 87 months to 108 months on the count to which he has pled. The United States agrees that the applicable guideline range in this case of 87 to 108 months is a fair representation of the seriousness of the defendant's criminal conduct.

There are some additional considerations under 3553(a) that the United States took into consideration when entering the 11(c)(1)(C) plea agreement in this case. Here, this will be his first time spending a significant amount of time incarcerated. PSR ¶¶ 42-44. This prison term will also affect his employment as well at the business that he started. PSR ¶¶ 58-60. Further, the United States understands that the defendant is 63 years old and a term of imprisonment anywhere between 51 to 63 months remains a significant term of imprisonment. Fourth, the United States understands that the guideline range of 87 to 108 months takes into consideration that the defendant met the safety valve criteria set forth in U.S.S.G. § 5C1.2(a)(1)-(5); however, the United States also took into consideration that at the time of the defendant's initial arrest he provided critical information to law enforcement regarding his illegal conduct. Fifth, the defendant in this case quickly secured counsel and took the initiative to enroll in a drug treatment program before this case began and has been actively participating in that treatment since April of this year. Understandably, the defendant for all of these reasons is asking for a 51 month sentence; however, given the seriousness of his conduct which includes the trail of victims associated with his extensive drug trafficking and the need to afford adequate deterrence and protect the public, the United States believes a sentence of 63 months will clearly communicate to the Defendant that his criminal conduct of engaging in trafficking in narcotics is serious and will not be tolerated in the United States. It will promote

respect for the law. Additionally, given the significance of a 63-month sentence it will provide an adequate deterrence to future criminal conduct.

Lastly, the United States is mindful of the additional pressures on inmates now due to the current COVID threat to those incarcerated and the United States is making concessions based on that increased pressure in many of our pending cases. Another reason for the United States concessions in this, and other, cases is the United States wants to provide an incentive to keep the court's dockets moving where possible. In this case the defendant moved his case toward completion in a timely manner as he did not file any substantive motions and as he represented a willingness to move forward with his plea and sentencing even though he could not by physically present during those hearings. Given the mitigating factors as outlined above along with these additional factors which are only present given the current pandemic, the United States mindfully made concessions in this case and agreed to an 11(c)(1)(C) plea to a range between 51 and 63 months on Count I of the Felony Information.

## CONCLUSION

In sum, after evaluating all the 3553(a) factors along with the specific considerations outlined above, the United States believes that a sentence of 63 months followed by 3 years of supervised release with the following special conditions: (1) the Defendant must submit to drug/alcohol testing, under a copayment plan, as directed by the U.S. Probation Office; (2) the Defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing, which would be required as a condition of supervision; (3) the

Defendant must participate in and successfully complete a substance-abuse evaluation and/or treatment, under a copayment plan, as directed by the U.S. Probation Office and during the course of treatment; (4) the Defendant must not consume alcohol, nor frequent any establishment where alcohol is the chief item of order; and (5) the Defendant shall not use, possess, ingest, or market products containing THC in any form or CBD products which are not obtained from a pharmacy by prescription meets the 3553(a) factors at this time.

DATED this 12th day of August, 2021.

ANDREA T. MARTINEZ
Acting United States Attorney


 /s/ Margot Merrill-Johnson
MARGOT MERRILL-JOHNSON
Special Assistant United States Attorney